UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

JAMAL JOHNSON
                  Defendant.

------------------------------------X

09 Cr. 139 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/23/09

**Sweet, D.J.**

       On May 22, 2009, Jamal Johnson ("Johnson" or "Defendant") appeared before the Honorable Gabriel W. Gorenstein and pleaded guilty to one count of Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, Johnson will be sentenced to 52 months' imprisonment and a term of three years' supervised release. Johnson also will be required to pay a special assessment of $100.

**Prior Proceedings**

       Information 09 Cr. 139 (RWS) was filed in the Southern District of New York on February 11, 2009. Count I charges that on January 17, 2009, in the Southern District of New York, Johnson, after having been convicted on February 9, 2000, in

1

Kings County Supreme Court, Brooklyn, New York, for attempted murder in the second degree, in violation of New York Penal Law §§ 110 and 125.24, a class B felony, possessed a Springfield Armory XD-40 semiautomatic pistol, which had been previously transported in interstate commerce.

Defendant's sentencing is currently scheduled for October 26, 2009.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 128 S. Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an

>   opportunity to argue for whatever sentence they
>   deem appropriate, the district judge should then
>   consider all of the § 3553(a) factors to determine
>   whether they support the sentence requested by a
>   party. In so doing, he may not presume that the
>   Guidelines range is reasonable. He must make an
>   individualized assessment based on the facts
>   presented.

Id. at 596 (internal citation and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

>   (1) the nature and circumstances of the offense
>   and the history and characteristics of the
>   defendant;
>
>   (2) the need for the sentence imposed-
>
>   >   (A) to reflect the seriousness of the
>   >   offense, to promote respect for the law,
>   >   and to provide just punishment for the
>   >   offense;
>   >
>   >   (B) to afford adequate deterrence to criminal
>   >   conduct;
>   >
>   >   (C) to protect the public from further crimes
>   >   of the defendant; and
>   >
>   >   (D) to provide the defendant with needed
>   >   educational or vocational training,
>   >   medical care, or other correctional
>   >   treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range
>   established for-
>
>   >   (A) the applicable category of offense
>   >   committed by the applicable category of
>   >   defendant as set forth in the guidelines
>   >   . . . ;
>
>   (5) any pertinent policy statement . . . [issued

by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 570 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Hamilton's personal and family history.

**The Offense Conduct**

4

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On January 17, 2009, at approximately 9 a.m., an officer with the Co-op City Department of Public Safety ("Officer-1") observed an individual subsequently identified as Johnson walking in a parking garage located in the Co-op City housing development in the Bronx, New York. Officer-1 approached Johnson and asked him why he was in the parking garage, to which Johnson responded that he was looking for his girlfriend's car. Officer-1 then asked Johnson where his girlfriend resided, to which Johnson responded that she lived in "Building 15" and pointed to a structure that Officer-1 knew to be a residential building designated with the number 27. Officer-1 then asked Johnson to produce proof of identification, to which Johnson responded that he did not have any identification. Johnson then walked away from Officer-1 and upon reaching a stairwell, began running. Officer-1 gave a description of Johnson over his police radio to other officers in the Co-op City Department of Public Safety. One of those other officers ("Officer-2") communicated over the police radio that he had identified an individual matching the description given by Officer-1 running on Baychester Avenue in the Bronx, near Harry S. Truman High School. As

Officer-1 traveled to that location in his patrol car, he observed Johnson running.

Officer-1 proceeded to run after Johnson. Officer-1 observed Johnson throw an object over a fence. Officer-1 commanded Johnson to stop, whereupon Johnson ceased running and was placed in handcuffs by Officer-1. After Johnson was apprehended, an individual witness ("Witness-1") stated to Officer-1 and others who were present that he had observed Johnson throwing an object over the fence. Witness-1 stated to Officer-1 and other officers present that he believed that the object was a pistol. Witness-1 also identified to the officers where he had observed the object land. Another officer walked to the area that Witness-1 had identified, and observed a Springfield Armory XD-40 semiautomatic pistol lying in that area. The manufacturer's number was obliterated from the firearm.

Per information from the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Springfield Armory XD-40 pistol has never been manufactured in the state of New York.

Per a criminal records inquiry conducted by the New York Police Department ("NYPD"), Johnson was convicted on February 9, 2000, in Kings County Supreme Court, Brooklyn, New

York, of attempted murder, in violation of New York Penal Law § 125.25, a class B felony; assault in the first degree, in violation of New York Penal Law § 120.10, a class B felony; criminal possession of a weapon in the second degree, in violation of New York Penal Law §256.03, a class C felony; attempted robbery in the first degree, in violation of New York Penal Law § 160.15, a class C felony; criminal possession of a loaded firearm in the third degree, in violation of New York Penal Law § 265.02, a class D felony; tampering with physical evidence, in violation of New York Penal Law § 215.40, a class E felony; and attempted robbery in the third degree, in violation of New York Penal Law § 160.05, a class E felony, and was sentenced to seven years' imprisonment.

**The Relevant Statutory Provisions**

The maximum term of imprisonment for Count I is ten years, pursuant to 18 U.S.C. § 924(a)(2). If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Johnson is eligible for not less than one nor more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571(b)(3). Pursuant to 18 U.S.C. § 3013, a special assessment of $100 is mandatory.

**The Guidelines**

The November 1, 2008 edition of the United States Sentencing Commission Guidelines Manual has been used in this case, pursuant to § 1B1.11(a).

On June 13, 1995, when Johnson was fourteen-years old, he was arrested for Robbery in the Second Degree. On September 26, 1995, he was sentenced in New York County Supreme Court to sixteen months to four years' imprisonment, and was adjudicated a youthful offender. He served three years and two months of that sentence in various juvenile detention facilities until he was transferred to Downstate Correctional Facility, one month after his eighteenth birthday, where he served the remaining ten months.

The Defendant objected to the inclusion of this offense in the determining the base offense level and the criminal history category as calculated in the PSR. The Court agrees that Defendant's youthful offender adjudication should not be included in the calculation of his sentence.

The Second Circuit has noted that "[s]entencing judges in New York courts may take into account a prior youthful offender adjudication when evaluating a defendant's criminal history." United States v. Cuello, 357 F.3d 162, 166 (2d. Cir 2004). In addressing whether that adjudication ought to be considered a prior felony conviction for the purpose of sentencing, the Court of Appeals has instructed that the sentencing court should "examine the substance of the prior conviction at issue" by looking to a variety of factors, including the "nature of the proceedings, the sentences received, and the actual time served." Cuello, 357 F.3d at 168-69 (internal quotation marks omitted). In United States v. Johnson, 504 F.3d 250 (2d Cir. 2007), the Court of Appeals emphasized that "[t]here is no set formula for determining 'the substantive consequence of the criminal proceeding underlying the youthful offender adjudication.' The determination is a function of many variables, no single one of which is dispositive." Johnson at 253(internal citations omitted). The Court of Appeals has tended to "specifically

focus[] on whether a [youthful] offender has served his time in an adult prison." United States v. Saunders, 291 Fed. Appx. 367, 368 (2d Cir. 2008). Defendants whose youthful offender adjudications the Court of Appeals has seen fit to consider in determining offense levels for later sentences have, pursuant to being tried and convicted for those offenses in an adult court, served their sentences in adult facilities. See United States v. Amante, 256 Fed. Appx. 434 (2d Cir. 2007), United States v. Pereira, 465 F.3d 515 (2d Cir. 2006); United States v. Cuello, 357 F.3d 162 (2d Cir. 2004); United States v. Driskell, 277 F.3d 150 (2d Cir. 2002). Johnson, by contrast, spent the lion's share of the sentence he received for his youthful offender adjudication in a juvenile facility.

In previous cases where the Second Circuit has deemed the youthful offender adjudication relevant to the calculation of later sentence, the youthful offender adjudications occurred when the defendants were at least sixteen-years old--legally adults in New York. See, e.g., United States v. Saunders, 291 Fed. Appx. 367 (2d Cir. 2008) (defendant's youthful offender adjudication stemmed from a robbery he committed when he was seventeen-years old); United States v. Pereira, 465 F.3d 515 (2d. Cir, 2006) (defendant's youthful offender adjudication stemmed from a conviction when he was sixteen-years for being in possession of a stolen); United

10

States v. Cruz, 136 Fed. Appx. 386 (2d Cir. 2005) (defendant's youthful offender adjudication stemmed from a conviction when he was sixteen for possession of a controlled substance); United States v. Driskell, 277 F.3d 150 (2d. Cir 2002) (defendant's youthful offender adjudication stemmed from an attempted murder conviction when he was seventeen-years old); United States v. Matthews, 205 F.3d 544 (2d Cir. 2000) (defendant's youthful offender adjudication stemmed from a conviction when was eighteen-years old for criminal possession of a weapon). By contrast, Johnson was only fourteen-years old when he was convicted of Robbery in the Second Degree. His considerable youth at the time is grounds for excluding that adjudication in calculating his base offense level for the purposes of this sentence.

For the foregoing reasons, the Court finds that his youthful offender adjudication stemming from his 1995 arrest should not contribute to his base offense level.

Accordingly, the guideline for the violation of 18 U.S.C. § 922 that applies to Johnson is found in § 2K2.1(a)(4)(A). That Guideline sets a base offense level of 20. Because the Johnson possessed a firearm with an altered or obliterated serial number, his offense level is increased by 4 levels, pursuant to §2K2.1(b)(4). Johnson is entitled to a three-level decrease in his

11

offense level for acceptance of responsibility under § 3E1.1(a).

Accordingly, the applicable offense level is 21.

On November 8, 1999, Johnson was arrested and charged with Attempted Murder in the Second Degree in Kings County Supreme Court. On August 23, 2000, Johnson was sentenced to 7 years in prison followed by two years and six months post-release supervision. Pursuant to § 4A1.1(a), this conviction warrants three criminal history points.

For the reasons outlined above, Johnson's 1995 youthful offender adjudication will not be considered in totaling his criminal history points.

On the date he was arrested for the present offense Johnson was still under supervised release. Pursuant to § 4A1.1(d), this warrants the addition of two criminal history points.

A total of five criminal history points establishes a Criminal History Category of III, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 21 and a Criminal

History Category of III, the Guidelines range for imprisonment is 46 to 57 months.

The Guidelines range for a term of supervised release is at least two years but not more than three years, pursuant to § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable Guideline range is in Zone D of the Sentencing Table, Johnson is not eligible for probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offense is from $10,000 to $100,000, pursuant to § 5E1.2(c)(3)(A). Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1,990.13 for community

confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  Pursuant to all of the factors, it is hereby determined that a sentence within the Guidelines framework is warranted.

## The Sentence

For the instant offense, Johnson will be sentenced to 52 months' imprisonment and a three-year term of supervised release.

Johnson is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence the three-year term of supervised release. It is recommended that Johnson be supervised by the district of his residence.

As mandatory conditions of his supervised release, Johnson shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance; and (5) shall cooperate in the collection of DNA as directed by the probation officer. The mandatory drug condition is suspended due to the imposition of drug treatment special condition.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition that Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

Defendant will participate in a program approved by the

United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 26, 2009.

It is so ordered.

**New York, NY**
**October** 23 **, 2009**

ROBERT W. SWEET
U.S.D.J.